# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

PHILIP AVERY, JR.,              )
                                     )
                Plaintiff,       )
                                     )
             v.                )   Case No. 1:16-cv-2312-TWP-TAB
                                     )
NANCY A. BERRYHILL, Acting Commissioner )
of Social Security, [1]              )
                                     )
              Defendant.      )

## ENTRY ON JUDICIAL REVIEW

Plaintiff Philip Avery, Jr. ("Avery") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Avery's claim was denied initially and on reconsideration, and he requested a hearing before Albert J. Velusquez, Administrative Law Judge ("ALJ"). The ALJ held a hearing and decided that Avery was not entitled to benefits. Avery sought review with the Appeals Council, which granted review and remanded for a new decision. The ALJ held a second hearing and issued a decision, again finding Avery not entitled to benefits. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Avery subsequently filed this action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. For the reasons stated below, the Court **REMANDS** the decision of the Commissioner for further consideration.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

# I. BACKGROUND

Avery was born in 1966 and he was 45 years old on his alleged disability onset date, April 14, 2011. He met the insured status requirements of the Social Security Act through December 31, 2016. He has past work experience as a routing clerk, hospital clerk, forklift operator, baggage handler, cashier, and telemarketer.

Avery developed back problems following a car accident in 2011. When he applied for DIB in 2012, Avery wrote that he was disabled by pain in his back and left leg, stiffness in his back, numbness and a burning sensation in his left leg, and left-sided weakness. He reported that he used a cane sometimes, had trouble walking, standing, and sitting, and changed positions "a lot."

Avery has received extensive treatment for chronic lower back pain, including two discectomies, epidural injections, physical therapy, and narcotic pain medication, all with little or no improvement. (*See* Filing No. 14-11 at 2.) The ALJ found that Avery has severe physical impairments of degenerative disc disease status post laminectomies with chronic pain and lumbar radiculitis. (Filing No. 14-2 at 15.) The ALJ also found that Avery does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (*Id.*) The ALJ assessed Avery's residual functional capacity and determined that he was able to perform his past work as a hospital clerk and telemarketer. (*Id.* at 22.) In the alternative, the ALJ found other work that Avery could perform. (*Id.* at 23-24.) Thus, the ALJ determined that Avery was not disabled and denied his application for benefits.

# II. DISCUSSION

The Court determines whether substantial evidence supports the ALJ's decision and whether the ALJ applied the correct legal standards. *Stepp v. Colvin,* 795 F.3d 711, 718 (7th Cir.

2015); *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013). The ALJ is not required to mention every piece of evidence, *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012), but he must build an accurate and logical bridge from the evidence to his conclusions, *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015).

Avery challenges the ALJ's decision, arguing he made two errors. First, Avery maintains the ALJ did not properly consider the pain management specialist Christopher Doran, M.D.'s opinion that Avery needs a spinal cord stimulator[2]. Second, Avery maintains that the ALJ made a patently erroneous credibility determination.

An ALJ is required to articulate his evaluation of relevant medical evidence; merely reciting the evidence does not suffice. *Booker v. Astrue*, Cause No. 4:08-cv-097-SEB-WGH, 2009 WL 2987177, at *6 (S.D. Ind. Sept. 15, 2009); 20 C.F.R. § 404.1527(b). Avery's neurosurgeon Thomas Leipzig, M.D. ("Dr. Leipzig"), treated him from April to December 2011, which treatment included two micro-discectomies. In December 2011, Dr. Leipzig referred Avery to a pain management specialist, Dr. Doran, for evaluation for spinal cord stimulation. (Filing No. 14-10 at 7.) Dr. Doran determined that Avery was "an excellent candidate for spinal cord stimulation…." (*Id.* at 6.) The ALJ mentions the spinal cord stimulator three times in his decision. (Filing No. 14-2 at 18) (noting referral to Dr. Doran and the fact the psychologist cleared Avery for a stimulator); *id.* at 19 (noting Avery alleged he could not obtain a stimulator due to insurance issues); *id.* at 20 (stating Avery said he was offered a stimulator but has no insurance). But the ALJ did not evaluate Dr. Doran's opinion that Avery was an excellent candidate for a spinal cord stimulator. Avery does not ask the ALJ to "play doctor" and to agree or disagree with the opinion

---

[2] A spinal cord stimulator is an implant that uses electrical impulses to control or relieve chronic pain and is used in patients for whom conservative treatments have failed. www.spine-health.com.

that Avery needs a spinal cord stimulator. Rather, he seeks an evaluation by the ALJ of the physician's opinion.

A recommendation that a claimant obtain a spinal cord stimulator does not necessarily compel a finding of disability. However, the opinion is important because it supports Avery's claims regarding the extent and persistence of his pain. A spinal cord stimulator is a recommendation for "aggressive and invasive" treatment of Avery's back pain. *See Ramey v. Astrue*, 319 F. App'x 426, 429 (7th Cir. 2009); *Camacho v. Colvin*, 15cv7080(CM)(DF), 2017 WL 770613, at *24 (S.D.N.Y. Feb. 27, 2017) (suggesting that a referral for a spinal cord stimulator was a referral for intensive treatment of back pain). The recommendation itself suggests that Dr. Doran thought Avery's pain was severe enough to warrant a spinal cord stimulator, which corroborates Avery's allegations of disabling pain. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (noting that evidence claimant submitted to pain-treatment procedures such as "heavy doses of strong drugs" like Vicodin and morphine and had a surgical implantation of a spinal-cord stimulator corroborated her complaints of pain and it was improbable that medical providers would prescribe drugs and other treatment if they thought claimant was faking her complaints). Similarly, Dr. Leipzig's referral of Avery to Dr. Doran for evaluation for a spinal cord stimulator suggests that Dr. Leipzig thought Avery's pain was severe enough to warrant such treatment and that other, less invasive, treatments would not be effective. If the ALJ accepted the opinion as to the need for a spinal cord stimulator, this would enhance Avery's credibility. If the ALJ rejected the opinion, however, he did not provide any reasons for doing so, and the ALJ must give good reasons for rejecting medical opinions. In the end, we do not know what the ALJ thought about the opinion because his decision does not evaluate it.

The Commissioner responds that Dr. Doran's recommendation of a spinal cord stimulator is not a "medical opinion." The Court disagrees. The regulations state: "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis …." 20 C.F.R. § 404.1527(a)(2). Dr. Doran's opinion that Avery should have a spinal cord stimulator is an opinion from an acceptable medical source (a physician) and reflects judgment about the nature and severity of Avery's pain. Even if Dr. Doran's opinion that Avery should get a spinal cord stimulator was not a "medical opinion" under the regulations, the ALJ still must consider it in determining Avery's functional limitations. *See, e.g.*, *Roddy*, 705 F.3d at 638; 20 C.F.R. § 404.1526(d).

Turning to the second issue, "[t]he court will defer to an ALJ's credibility finding so long as it is not 'patently wrong.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015). "In determining credibility[,] an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558562 (7th Cir. 2009) (citations omitted); *see* 20 C.F.R. § 404.1529(c). An "ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it." *Engstrand*, 788 F.3d at 660; *see also* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ

explains that the decision did not depend on the credibility finding." *Engstrand*, 788 F.3d at 660 (quoting *Pierce v. Colvin,* 739 F.3d 1046, 1051 (7th Cir. 2014)).

The Court agrees with Avery that the ALJ's credibility analysis contains enough flaws that a remand is required. *See Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (rejecting argument that the ALJ's errors in making the credibility determination were harmless because the ALJ had other grounds to discredit the claimant's testimony"). The ALJ gave inadequate reasons for finding Avery's statements about the intensity and persistence of his symptoms and resulting limitations "not entirely credible" (Filing No. 14-2 at 20.) For one, the ALJ relied on an alleged lack of objective findings to support Avery's allegations. However, an ALJ "may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Engstrand*, 788 F.3d at 660; *see also Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (stating a claimant's "testimony cannot be disregarded simply because it is not corroborated by objective medical evidence").

In addition, objective medical evidence supports Avery's allegations. The medical records document his persistent complaints of lower back and left leg pain. (*See, e.g.*, Filing No. 14-9 at 26; Filing No. 14-10 at 12, 16; Filing No. 14-11 at 11.) X-rays and MRI studies have revealed disc space narrowing, herniated discs with nerve root impingement, and stenosis. (Filing No. 14-9 at 3, 26; Filing No. 14-10 at 13, 15, 19-20, 24, 26.) Physicians have diagnosed Avery with multilevel lumbar spondylosis, degenerative disc disease, disc herniation, radiculitis, and chronic lower back pain. (*See, e.g.*, Filing No. 14-10 at 13, 26; Filing No. 14-11 at 3, 6, 12.) Avery has undergone extensive treatments for chronic pain, including two discectomies, epidural injections, physical therapy, and he has taken narcotic pain medications such as Morphine, Vicodin, and OxyContin. (*See, e.g.*, Filing No. 14-9 at 26; Filing 14-10 at 21-22; Filing No. 14-11 at 6.)

Although physical examinations have indicated some normal findings, Avery also has had abnormal findings, including antalgic gait, muscle weakness, absent deep tendon reflex, and positive straight-leg raising tests.  (*See, e.g.*, Filing No. 14-10 at 12, 15-18, 41; Filing No. 14-11 at 24, 43.)  What's more, the pain specialist thought Avery was an excellent candidate for the invasive treatment of a spinal cord stimulator.  (Filing No. 14-10 at 6.)

The ALJ also considered that Avery failed to show for one of his physical therapy appointments and failed to follow-up with physical therapy.  (Filing No. 14-2 at 18.)  "[A]n ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide."  *Roddy*, 705 F.3d at 638 (internal quotation and citation omitted).  The Commissioner argues that the ALJ noted this "no show" in stating Avery's treatment history and did not take it into account in assessing Avery's credibility.  The Court cannot be so sure.  The ALJ noted that Avery did not show for one appointment in the section of his decision addressing credibility, which spans pages five through eleven of the ALJ's decision.  (Filing No. 14-2 at 16-22.)  In addition, in deciding that Avery's statements are not entirely credible, the ALJ refers to "the reasons explained in this decision."  (Filing No. 14-2 at 20.)  Likewise, the ALJ noted that Dr. Nydia Nunez-Estrada, M.D., had referred Avery to an Integrative Pain Program but he failed to show.  (*Id.* at 19.)  If the ALJ did not rely on Avery's failure to show for the physical therapy appointment and Integrative Pain Program, it seems the ALJ had no reason to mention them.  And the ALJ did not ask Avery why he was a "no show" for the physical therapy appointment.  (He did attend the other scheduled therapy appointments.)  Nor did the ALJ ask Avery why he did not attend the pain program.

Further, the ALJ found that Avery's ability to attend classes at Ivy Tech and obtain an Associate Degree "undermines his claim that he is totally disabled from his back problem." ([Filing No. 14-2 at 18](#).) The ALJ did note Avery's testimony that the classes consisted of equal part Internet time and classroom time and that he was able to stand and sit as needed. But the ALJ may have ignored that Avery took only one class a semester. (*See* [Filing No. 14-2 at 42](#).) And if the ability to take limited classes with accommodations for sitting and standing (and perhaps even lying down when the classes were on the Internet) is inconsistent with Avery's claimed persistent back pain, further explanation of the perceived inconsistency is required. It is not apparent. The ability to attend classes as Avery explained he did does not show an ability to maintain gainful, full-time employment.

The ALJ wrote that Avery "has alleged that he cannot obtain the stimulator due to insurance issues" but then notes that he "has been able to come under the care of Nydia Nunez-Estrada." (Filing No. 14-2 at 19.) The ALJ again noted that Avery "stated that he was offered a stimulator but does not have insurance." ([Filing No. 14-2 at 20](#).) The Commissioner suggests that the ALJ did not hold the failure to proceed with a spinal cord stimulator against Avery. But the Court agrees with Avery: the ALJ doubted Avery's testimony that he did not proceed with a spinal cord stimulator because he did not have insurance and could not afford it. No evidence contradicts Avery's testimony as to a lack of insurance, and there *is* evidence that Avery's treatment with Dr. Nunez-Estrada was free. ([Filing No. 14-2 at 39](#).) Thus, Avery's failure to proceed with the stimulator does not call into question his statements about the intensity and persistence of his pain.

In addition, the ALJ emphasized that in July 2013 Dr. Nunez-Estrada found that Avery's pain "*seems out of proportion with the exam*." ([Filing No. 14-2 at 19](#).) But despite treating Avery for over two and one-half years, she never repeated that assessment. Dr. Nunez-Estrada also found

a medical basis for Avery's pain (spondylosis) for which she prescribed the narcotic Morphine, and she noted that his pain prevented him from working full-time even in a sedentary position. (Filing No. 14-11 at 3, 6.) This other evidence suggests the ALJ placed too much emphasis on the July 2013 examination. The ALJ should reconcile Dr. Nunez-Estrada's opinions.

In addition, the ALJ discounted Avery's testimony about his daily activities, reasoning:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(Filing No. 14-2 at 20-21). This reasoning does not withstand scrutiny. A self-report of daily activities cannot be dismissed simply because it is subjective. *See Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Whatever uncertainty may exist around such self-reports is not by itself reason to discount them—otherwise, why ask in the first place?"). Besides, Avery did present third-party evidence to corroborate his allegations of fairly limited daily activities: his sister's function report. (*See* Filing No. 14-7 at 27-33.) For example, his sister stated that she cleans for Avery; he only shops for food and does so only when his helper is unavailable; and Avery attends family meals on Sundays, as well as church and other social meetings only when his pain allows or when he has a ride. (Filing No. 14-7 at 27, 30, and 31.) The ALJ gave the sister's report "limited weight" based on the alleged lack of corroborating medical evidence.

However, as noted, the reliance on the supposed lack of corroborating medical evidence is problematic. "The ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it." *Engstrand*, 788 F.3d at 660;

*Hill*, 807 F.3d at 869 (stating a claimant's "testimony cannot be disregarded simply because it is not corroborated by objective medical evidence").  Contrary to the ALJ's opinion, quite a bit of objective medical evidence supports Avery's allegations of left leg pain and resulting functional limitations.  Furthermore, the ALJ's reference to "other factors discussed in this decision" is unhelpful to this reviewing Court because the ALJ does not identify what those other factors are or explain how they cut against Avery's allegations.  *See, e.g.*, *Schrock v. Colvin*, No. 1:14-cv-00069-JMS-DML, 2015 WL 364246, at *5 (S.D. Ind. Jan. 27, 2015).

Lastly, the ALJ's decision does not reflect the ALJ's consideration of Avery's good work history in assessing Avery's statements about his pain, other symptoms, and limitations.  A "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Hill*, 807 F.3d 862 at 868 (citation and quotation omitted).  *But see Reed v. Berryhill*, No. 1:16-cv-00359-SEB-TAB, 2017 WL 1190510, at *5 n.4 (S.D. Ind. Mar. 31, 2017) (stating that 20 C.F.R. § 404.1529(c)(3) "does not require a consideration of work history to make a credibility determination").  However, "work history is just one factor among many, and it is not dispositive." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).  At the second hearing, the ALJ stated that Avery had "a really solid work history" of which he should be proud.  ([Filing No. 14-2 at 48](#).)  But the decision does not mention Avery's good work record, suggesting the ALJ did not take it into account in assessing Avery's credibility.  Given the other problems with the ALJ's credibility analysis, consideration of Avery's "solid work history" may result in a more favorable assessment of his statements about the persistence, intensity, and limitations of his pain.

### III.  <u>CONCLUSION</u>

For the reasons stated above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date:  8/8/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov